PETRONA MORALES WIDOW OF VALENTÍN ET AL., Plaintiffs, Appellants, and Appellees, *v.* COMMONWEALTH OF PUERTO RICO, Defendant, Appellee, and Appellant, and MANUEL SEOANE FAURA, Codefendant and Appellee.

No. 12580. Decided December 8, 1961.

*Angel Manuel Ciordia* for plaintiffs, appellants, and appellees. *Francisco Espinosa, Acting Secretary of Justice, Arturo Estrella* and *Edgar S. Belaval, Assistant Secretaries of Justice,* for defendant, appellant, and appellee. *Gloria M. Mimoso Laguna* for codefendant and appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

The Superior Court, Arecibo Part, rendered judgment on January 17, 1958 granting the claim for damages against the Commonwealth of Puerto Rico and dismissing an action against Manuel Seoane Faura. The trial court set forth in its findings of fact that Manuel Seoane Faura worked as Planning Engineer II for the Planning Board of the Office of the Governor and that on May 5, 1955 he was going to Arecibo on official business in compliance with an order given him and that he drove his own car. At Km. 48 of Commonwealth Road No. 2 he ran over José María Valentín, causing his death. The accident was due to the negligence of Seoane who was driving at excessive speed and did not take other precautions, without being authorized to drive motor vehicles and to the contributory negligence of a truck driver in front of him which Seoane attempted to overtake when he ran over Valentín.[1]

The widow and 19 children, 14 of legal age and 5 minors, sued. The widow and the minors depended on the victim for their maintenance and suffered patrimonial damages for loss of support provided by the deceased and also moral damages. As to those of legal age, the court decided that they suffered patrimonial damages consisting in having been able to inherit the deceased in whatever capital he might leave at his natural death,[2] and moral damages.

The court decided as a matter of law that there was negligence; that Act No. 104 of June 29, 1955 limited the actions for damages against the Commonwealth to a maximum liability of $15,000, and that the Commonwealth was

---

[1] Neither the driver of this truck nor its owner nor any person related therewith were brought to the suit as codefendants or as third-party defendants. This finding of contributory negligence has no legal effect whatever on the decision of the case.

[2] This concept of patrimonial damages does not lie because it is obviously speculative. At his natural death the victim could have increased his property, if any, or there could have been no inheritance at all.

liable for damages to plaintiffs up to $15,000 for all of them. By virtue of said conclusions it rendered judgment ordering the Commonwealth to pay plaintiffs the amount referred to, which it divided among the widow and the 19 children in the proportion of $5,000 for the widow and $10,000 to be distributed among the nineteen children of and under age, which in the absence of any other provision, we must presume should be in equal shares. It dismissed the action as to codefendant Manuel Seoane Faura on the ground that if he did act negligently, he did so as employee and agent of the Commonwealth of Puerto Rico in the scope of his employment. The judgment was rendered *without costs* or attorney's fees.

On July 26, 1955 plaintiffs filed an action for damages against Manuel Seoane Faura and the Commonwealth of Puerto Rico, codefendants, Case No. 55–786. By virtue of a motion to dismiss, on November 1, 1955 final judgment was rendered dismissing the complaint as to the Commonwealth. The case was maintained as to codefendant Seoane.

On May 23, 1956, Case No. 56–536 was filed against the Commonwealth of Puerto Rico on the same facts. This second case was filed by virtue of Joint Resolution No. 21 of April 26, 1956 which provided the following:

"Section 1.—The estate of José María Valentín and his widow, Petrona Morales Vda. de Valentín, are hereby authorized to bring in the court having jurisdiction a civil action against the Commonwealth of Puerto Rico to recover damages allegedly sustained by them as a result of an automobile accident occurred May 5, 1955 at kilometer 48 on Commonwealth Road Number Two, in which it is claimed that Manuel Seoane Faura, Planning Engineer II, while working for the Planning Board of the Office of the Governor of the Commonwealth of Puerto Rico, allegedly ran over and caused the death of José María Valentín.

"Section 2.—The estate of José María Valentín and Petrona Morales Vda. de Valentín are hereby expressly authorized to sue the Commonwealth of Puerto Rico in the Part of the Court of First Instance in Puerto Rico having jurisdiction for alleged

damages and losses caused by the action or omission of any official, agent or employee of the Commonwealth or any other person while acting in his official capacity and within the scope of his function, office or employment, through guilt or negligence."

The Commonwealth having requested the dismissal of the complaint, the court did so only as to a claim in excess of $15,000.

Both parties appealed from the judgment rendered on the merits of the case. The Commonwealth charges that: (1) the trial court committed error at law in refusing to dismiss the complaint; and (2) grave error of fact and at law in weighing the evidence on negligence and its legal effect.

Plaintiffs assign error to the court: (1) in dismissing the complaint as to codefendant Manuel Seoane; (2) in limiting the liability of the Commonwealth toward all the plaintiffs to $15,000; (3) in granting $5,000 to the widow as payment for all the damages caused her; and (4) in granting to the other 19 plaintiffs the amount of $10,000 as compensation for damages caused to all of them.

## I

The trial court acted correctly in refusing to dismiss this second complaint against the Commonwealth. The Government contends that when the accident occurred there was no cause of action since the Commonwealth was not acting through a special agent, and that the Joint Resolution did not grant said cause of action. That Act No. 104 of 1955 was applicable only in cases in which the cause of action had accrued after its effectiveness.

It is true that on May 5, 1955, when the accident occurred, § 1803 of the Civil Code had not yet been amended eliminating the special agent requirement in order to make the People liable, providing as does now said section, that the People is liable in this concept as a private citizen. That requisite was eliminated by the approval of Act No. 104 of June 29,

1955, effective on said date. There are at least three reasons why the contention of the Commonwealth is erroneous. In the first place, the Joint Resolution copied is not limited to authorizing the suit as other former ones, *cf. Campis* v. *People*, 67 P.R.R. 366; *M. Grau e Hijos* v. *People*, 51 P.R.R. 12, rather it expressly provided that the complaint was authorized for alleged damages caused by the action or omission of the official, agent or employee of the Commonwealth which acting in his official capacity and within the scope of his function, office or employment, through guilt or negligence, *cf. Rodríguez* v. *People*, 75 P.R.R. 377; *Irizarry* v. *People*, 75 P.R.R. 740. The classic characteristic which precisely distinguished the position of the special agent of § 1803 was that he did not act within the scope of his function, office or employment, performing the ordinary duties of the office. *Cf. Acevedo* v. *People*, 69 P.R.R. 402; *Peña* v. *People*, 68 P.R.R. 870; *Rivera* v. *People*, 65 P.R.R. 925; *Soto* v. *Luchetti*, 58 P.R.R. 715.

In the second place, when on April 26, 1956 said Joint Resolution was approved, the Legislative Assembly had already adopted, since June 29, 1955, a new public policy, in the sense that the performance of a special agent was not required, thus the Joint Resolution in fact followed, in this particular case, a public policy already generally set forth for everybody.

In the third place, Act No. 30 of June 11, 1957, effective on that date before the trial court had rendered final judgment on January 17, 1958, provided that Act No. 104 of 1955 would be applicable to facts occurring between June 29, 1954 and June 28, 1955, that is within the year immediately preceding the effectiveness of the above-mentioned Act No. 104. The facts of the case having occurred on May 5, 1955, they were covered by the provisions of Act No. 104, one of those provisions—§ 10—being the elimination of the requirement of the special agent of § 1803 for the Commonwealth to be

114

liable. On the other hand, Act No. 30 of 1957, provided that judicial proceedings based on facts that took place between June 29, 1954 and June 28, 1955 already commenced on June 11, 1957 when said Act prevailed would continue to be prosecuted to the end according to the legislation in force on the date of the filing thereof. This suit was filed on May 23, 1956, and hence the Act in force for the purposes of the former saving clause was No. 104 of 1955.

■ In the light of the very text of Joint Resolution No. 21 as well as for these other reasons, there existed a cause of action against the Commonwealth even if the latter had not acted through a special agent.

■■ The other contention of the Government to the effect that the Commonwealth is not liable pursuant to § 6(d) of Act No. 104, because its employee's action constituted a public offense, that of involuntary manslaughter, is untenable pursuant to the decision in *Meléndez* v. *Commonwealth*, 81 P.R.R. 798. In connection with this problem it is worth noting that historically, according to our decisions, the *Aquilian* liability of the State was made to rely substantively on §§ 1802 and 1803 of the Civil Code and not on Act No. 76 of 1916 nor on the other acts which allow the State to be sued We held that those laws and said sections should be construed jointly and in a complementary manner. Far from repealing or altering said sections, Act No. 104 kept the effectiveness of the same in its own body, eliminating now the special agent requirement. The *Aquilian* liability of the State through negligence of the employee is not removed because of the fact that said negligence is also punishable by law upon constructing said Act No. 104 as a whole and not isolatedly.

■ The second error charged by the Government does not lie either. The evidence in record upholds the findings of fact of the trial court as to fault and negligence. The Commonwealth contends that it did not authorize its em-

ployee to use his own vehicle for said duty. It is a well-settled rule in our case law that the controlling test is whether the employee acted or not in the interest of his employer or manager and on his behalf. In this case the Planning Board ordered the official business and did not provide him with the transportation nor provided the means he should use. Seoane stated that he was neither authorized nor forbidden to use his car; this was left to his own discretion. Under those circumstances the Commonwealth assumed the risk in the manner that its employee chose to go to Arecibo.

## II

■ Let us see the errors assigned by the plaintiffs. The first was that the trial court erred in dismissing the complaint as to Seoane. Ordinarily, the person who causes the damage is always liable under § 1802 of the Civil Code, irrespective of whether his employer or manager is liable for him. There is no problem in the doctrine concerning the liability of the one who directly causes the damage— § 1802. So much so that § 1804 provides that a person who pays for the damage caused by his employees may recover from the latter what he may have paid.

■ But this case is governed by special provisions. Act No. 104 itself establishes that the judgment entered in any action authorized by said Act shall preclude any other action on the part of the claimant by reason of the same issue or matter against the officer, agent, or employee whose act or omission gave rise to the action; and a judgment against the officer, agent, or employee shall likewise preclude any action against the Commonwealth.[3]

---

[3] With respect to the Federal Tort Claims Act which served as model for ours, 28 U.S.C.A. § 1346(b), it is provided in § 2676 which treats on procedure, that a judgment, under § 1346(b) shall constitute a complete bar to any action by the claimant, by reason of the same subject matter against the employee of the government whose act or omission gave rise to the claim. *Cf. Chagnon* v. *Griffiths, Jr.,* 17 F.R.D. 22 (D.C. Mass., Aldrich); *Uarte* v. *United States,* 7 F.R.D. 705 (D.C. Cal.); *Sappington* v.

In this case there were two separate actions which for the purposes of the trial were heard jointly, on the same evidence. The trial court having decided that Seoane was acting in his capacity of employee and agent of the Commonwealth when causing the damage, and having rendered judgment against the latter, it did not commit error in dismissing the complaint of Case No. 55–786 prosecuted against the employee.

■ Plaintiffs' second assignment of error refers to the limitation of the amount of damages. They maintain that there was no limitation because their case is governed by Joint Resolution No. 21 which does not contain any such limitation. Under the circumstances in which the above-mentioned Joint Resolution was approved plaintiffs are wrong. Act No. 104 of 1955, which was already in force, had provided a legislative rule establishing said limitation, in order to sue for a higher sum or to pay the excess of a judgment over said limit it would be necessary to obtain *specific* legislative authorization. In view of said provision, which involves a general public policy, we cannot interpret the Joint Resolution subsequently adopted as permitting suits without any limit because it would silence the fact or because it gave authorization "to recover damages". As long as Act No. 104 stands, these individual legislative acts should *expressly* exonerate from the general limitation requirement established so that we may so understand it. In fact, the Joint

*Prencipe*, 87 F. Supp. 357 (D.C. D.C.); *Sullivan* v. *United States*, 120 F. Supp. 217 (D.C. Ill.); *United States* v. *First Sec. Bank of Utah*, 208 F.2d 424 (C.A. 10) and Note in 42 A.L.R.2d 960. *Cf. United States* v. *Gilman*, 347 U.S. 507. In this case the Government tried to recover from the employee, which was denied by the Supreme Court on considerations of policy and the relations between them, and it reaffirms that the law does not touch the liability of the employee except that it makes the judgment against the United States a complete bar to any action by the claimant against the employee. The above-cited cases show that under that legislation the employee and the Government can not be sued in the same action as codefendants.

Resolution merely anticipated, for this particular case, what was later made general by Act No. 30 of 1957. See, Report of the Juridical Committee of the H.R. on J.R. No. 21 (C. 2746), VIII Journal of Proceedings 161, No. 27.

 We agree with the appellants concerning the trial court's interpretation of the provision of the Act in relation to the limit of $15,000. It is firmly established in our case law that the cause of action of the persons who sue by reason of another's death through the fault or negligence of § 1802 is a cause of action directly from them against the tort-feasor, and not a cause of action inherited from the victim as part of the inheritance. See *Correa v. Puerto Rico Water Resources Authority*, 83 P.R.R. 139 (1961), and the annotations made therein of our cases and of the doctrine. Each claimant in that event has his own cause of action, independent of the others, for those damages that he is able to prove have been caused to him or he has suffered. Such being the principle of law which prevailed, the provision of Act No. 104 giving authorization to sue in "Actions for damages *to person* or property *up to* the sum of $15,000 caused by..." etc. refers to damages suffered by a plaintiff, not to an accident, transaction or event.[4] It is unquestion-

---

[4] The express language of the statute is clear in this sense. There is nothing in the legislative history of Act No. 104 that shows the contrary. The Federal Act does not contain any limit, as neither did our former legislation. The Government offers us no enlightenment on this contention in its briefs, nevertheless in the legislative history of House Bill No. 133 of 1957 which attempted to amend Act No. 104 by eliminating the $15,000 limit and which did not become law, there is a letter from the Secretary of Justice of February 24, 1958, in which, when his opinion was asked as to the convenience of increasing the limit to $100,000 instead of eliminating it, he expressed, among other considerations, the following: "As an example of the economical burden that is placed on the Government by increasing said maximum limit, I wish to tell you that at present we have pending before the courts, a claim of a widow and 19 children, whose claim *on the basis of the present limits* could have amounted to $300,000. Such as the case law of our Supreme Court stands today, in which even the brothers and sisters who do not depend on the deceased may sue, I consider

able that in this case not all the children were in the same position as to suffering damages, nor actually suffered the same damages.

Having decided the foregoing it is convenient to notice that in actions under this Act the judges of the Superior Courts should establish the amount of damages suffered in accordance with the evidence even when it could exceed $15,000, and render judgment subject to the limit if it were higher. It must be so since Act No. 104 itself permits specific legislative authorization for paying the amount of a judgment rendered *in excess* of the said limit. Of course, as we stated in *Correa*, and we repeat, this mission of the judges should be governed by a sound judgment and reasonable and weighted standards in the evaluation of each case, with an objective view of the facts proved, so that the remedial sense of the compensation established in § 1802 be always preserved and that the accident will not be a motive of speculation or profit.

For the reasons stated, the judgment entered by the Superior Court, Arecibo Part, will be affirmed except as refers to the $15,000 limit, which as a question *of law* was determined for all the damages for all the claimants, and the case is remanded to the trial court to determine the compensation corresponding to each plaintiff according to the evidence in harmony with the pronouncements of this opinion. The judgment rendered should include costs.

---

it highly dangerous to alter said maximum limit." We see therein, too, an administrative interpretation of Act No. 104 in the sense that the limit fixed applies to the compensations of persons who may have suffered damages, and not on the basis of a single event or accident.