18

UNITED STATES of America

v.

David KLAPHOLZ and Paula Klap-
holz, Defendants.

Application for the vacating and quashing of a search warrant issued against a certain apartment leased by David and/or Paula Klapholz, located at 366 Alexander Avenue, Bronx, New York, and the return and preclusion of any and all evidence seized thereunder.

Application for the vacating and quashing of a search warrant issued against a certain Safety Deposit Box (No. 3444) of Paula Klapholz, located at Dollar Savings Bank, Third Avenue and 147th Street, Bronx, N. Y., and the return and preclusion of any and all evidence seized thereunder.

United States District Court,
S. D. New York.
Feb. 11, 1955.

Leonard P. Moore, U. S. Atty., Eastern Dist., of N. Y., Brooklyn, N. Y., Cornelius W. Wickersham, Jr., Chief Asst. U. S. Atty., New York City, of counsel, for plaintiff.

Arthur Kaplan, New York City, for defendants.

WEINFELD, District Judge.

The defendants move to suppress all evidence obtained as a result of a search made (1) of their apartment on August

4, 1954 pursuant to a warrant issued on August 2, 1954; and (2) of defendant Paula Klapholz' safe deposit box on August 4, 1954 pursuant to a warrant dated that day.

They also move to suppress all evidence obtained during and by reason of the presence of government agents in the defendants' apartment from about 8:00 p. m. on August 2, 1954 to 11:30 a. m. August 4, 1954, on the ground (1) that the presence of the agents in the apartment violated their rights under the Fourth and Fifth Amendments of the Constitution of the United States and (2) that the delay in arraigning them was unreasonable under the McNabb rule [1] and in violation of Rule 5(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. A hearing was had in which much testimony was taken, directed principally to the latter part of the defendants' motion which we consider first. The following facts are amply supported by the evidence.

The defendants are husband and wife. At about 3:15 p. m. on August 2, 1954 the wife received a package at Idlewild International Airport (in the Eastern District) after she had signed a customs declaration that it contained only glassware. She then took the package, a wooden case, to a car where her husband was sitting behind the wheel. Customs agents, who had the defendants under surveillance, asked them to return to the customs office at the airport where the case was opened in the defendants' presence, and was found to contain a dozen packages of diamonds in a hollowed-out portion of the case end. The defendants were placed under arrest at approximately 4:00 p. m. and taken directly to the office of the supervising agent of the customs unit in Manhattan (in the Southern District) for questioning, photographing and fingerprinting. They arrived there at about 5:15 p. m. Again in the presence of both defendants the other end of the case was opened and additional packets of diamonds were found—in all there were about 2,000 carats of undeclared diamonds. The defendants were separated and questioned. Their denials of knowledge of the contents of the case were challenged by agents who made reference to documentary receipts by defendants for prior shipments of similar parcels. Confronted with this evidence the wife stated she had been only a messenger in the transmission of the contraband diamonds; that the persons for whom they were intended either telephoned or came to the defendants' apartment to pick up the packets. The wife was then requested to consider with her husband cooperating with the authorities by permitting the customs agents to go to the defendants' home where it was anticipated the ultimate consignees would call to claim the individual packets in accordance with past practice. At first the defendants were reluctant to aid; however the agents suggested that the defendants think of themselves and not of others who might be implicated. A conference room was made available to the defendants, who after discussing the matter in privacy for a total of approximately 45 minutes, indicated their readiness to permit the use of their apartment. This decision was reached at about 7:00 p. m. and shortly thereafter the agents, together with the defendants, left the customs office and reached the defendants' apartment at about 8:00 p. m., August 2nd. They remained in the apartment day and night until about 11:30 a. m. on August 4th.

During their stay at the apartment the agents listened in on all telephone calls on an extension which had been attached in the presence of the defendants. This arrangement had been discussed with, and consented to by, the defendants

1. McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; Upshaw v. United States, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100.

at the customs office after they had agreed to cooperate. There were numerous calls from unidentified persons both on the night of August 2nd and through August 3rd. Two persons at different times arrived at the defendants' apartment, possessed themselves of packages of diamonds (while the agents were secreted from view), and were arrested.

At about 7:00 a. m. on August 4th an overseas telephone call from Germany was received, during the course of which the defendant husband advised the caller, apparently his brother, that the police were in the apartment. This action was regarded by the agents as the end of the defendants' cooperation. Thereafter, at about 10:00 o'clock, the agents executed the search warrant which had been issued at about 6:00 p. m. on August 2nd. At 11:30 a. m. when the search was concluded the defendants were taken first to the customs office at New York City and then arraigned before a United States Commissioner in the Eastern District of New York at about 1:00 p. m.

■■ After a careful review of the minutes of the hearing, my notes made at the time the witnesses testified, and after observing their manner and demeanor, I am persuaded that the customs agents were present in the defendants' apartment with their full consent for the purpose of aiding in the apprehension of the alleged ultimate consignees of the packets of contraband diamonds. Further I find that the defendants, before they were questioned,

were fully advised as to their right against self-incrimination and their right to counsel. The record also warrants a finding that the defendants' consent was not the result of coercion, fraud or threats of any kind. The factors of consent, time and place of arrest, the time necessarily consumed in fingerprinting, photographing and questioning,[2] the further delay while defendants conferred in deciding whether or not to cooperate, are sufficient to justify the non-arraignment of the defendants on the evening of August 2nd. Under these conditions, it cannot be said that the failure to arraign them before 10:30 a. m. on the morning of August 3rd, when normally a Commissioner or other authorized judicial officer would have been available, constituted unnecessary delay.

But the question remains, whether the continued failure to arraign them from that time to 1:00 p. m. on August 4th was justified, as the government contends, by reason of their consent. While I have found that their consent to the agents' presence in the defendants' apartment was not in violation of their rights under the Fourth Amendment, it does not necessarily constitute a waiver of the right to a more prompt arraignment. There is nothing in the record which warrants a finding that the defendants either expressly or impliedly consented to forego the requirement of arraignment "without unnecessary delay" as commanded by Rule 5(a) of the Federal Rules of Criminal Procedure.[3] Indeed the govern-

---

2. "So long as no coercive methods by threats or inducements to confess are employed, constitutional requirements do not forbid police examination in private of those in lawful custody or the use as evidence of information voluntarily given." United States v. Carignan, 342 U.S. 36, 39, 72 S.Ct. 97, 99, 96 L.Ed. 48. Cf. Haines v. United States, 9 Cir., 188 F.2d 546, 553.

3. "Rule 5. Proceedings before the Commissioner
"(a) Appearance before the Commis-

sioner. An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States. When a person arrested without a warrant is brought before a commissioner or other officer, a complaint shall be filed forthwith."

ment agents do not claim that the subject of arraignment had been discussed with or mentioned to the defendants.

██ To uphold the government's position that consent to the agents' presence in the apartment also constituted consent to further delay in arraignment would mean that the defendants could have been detained for days on end[4]— until all the alleged confederates had been apprehended.[5] The contention that a defendant by voluntary cooperation to apprehend others relaxes the requirements of Rule 5(a) so that he could be detained without arraignment for an undetermined period—at least until the purpose of his cooperation is achieved—contains such dangerous implications as to cause one to pause. Rule 5 was intended as a safeguard against reprehensible practices in the law enforcement process[6] and its intended objective is not to be destroyed by a timeless doctrine of alleged consent or cooperation. While the rule permits "some delay" when a Commissioner is not available, or "when it is induced by the voluntary act of the accused in freeing himself of the burden of guilt",[7] it does not permit unlimited delay. There must be a cut-off point at which further delay becomes unreasonable. Otherwise there is danger of complete emasculation of the purpose of the rule and a resurgence of the evils of un-

lawful detention and secret interrogation which it was designed to eliminate.[8]

If a defendant, upon a theory of cooperation to aid in the arrest of others, can be held incommunicado *basic constitutional rights* may become more illusory than real. It is the requirement of prompt arraignment which, by imposing judicial supervision over the detention process,[9] protects him in his fundamental rights, including admission to bail, representation by counsel, and prompt and speedy trial. If arraignment may be indefinitely suspended on a concept so nebulous as cooperation, not only can unreasonably lengthy detentions ensue but also, a whole structure of procedural safeguards may be undermined.[10]

██ The defendants, not having consented to further delay in arraignment, either expressly or by conduct, were entitled to be taken before a Commissioner or other judicial officer no later than 10:30 a. m. on August 3rd. This was past the point when it could reasonably be asserted that the delay was the result of defendants' efforts to free themselves "of the burden of guilt".[11] The fact is that such admissions or incriminating statements as defendants made with respect to the receipt of prior parcels were so made on the previous day when questioned at the customs office in New York City. Indeed, as much is

4. The number of packets indicate there were at least a dozen consignees. Cf. United States v. Mitchell, 322 U.S. 65, 70, 64 S.Ct. 896, 88 L.Ed. 1140.

5. In point of fact the agents expected to apprehend the alleged participants at the defendants' apartment by 10:00 o'clock on the morning of August 3rd, and had so advised an Assistant United States Attorney who had been consulted in the question of arraignment.

6. McNabb v. United States, 318 U.S. 332, 343-344, 63 S.Ct. 608, 87 L.Ed. 819.

7. United States v. Leviton, 2 Cir., 193 F.2d 848, 854, 855.

8. Cf. IV, Report National Commission on

Law Observance and Enforcement (better known as the Wickersham Commission) (1931) referred to in United States v. Mitchell, 322 U.S. 65, 68, 64 S.Ct. 896, and Haley v. State of Ohio, 332 U.S. 596, 606, 68 S.Ct. 302, 92 L.Ed. 224. See also United States v. Carignan, 342 U.S. 36, 45, 72 S.Ct. 97, 96 L.Ed. 48.

9. Cf. McDonald v. United States, 335 U.S. 451, 455, 69 S.Ct. 191, 93 L.Ed. 153.

10. It is in fact doubtful that a defendant can *effectively waive the requirements* of Rule 5(a). Cf. United States v. Haupt, 7 Cir., 136 F.2d 661, 671.

11. United States v. Leviton, 2 Cir., 193 F. 2d 848, 855.

conceded by the government;[12] and so it cannot be claimed that continued non-arraignment was necessary to avoid interruption of a confession.

■ The suggestion that further delay was not unreasonable because· arraignment on the morning of August 3rd would have resulted in publicity, thus aborting the plan to apprehend the alleged confederates, is without substance. First and foremost, a citizen's right cannot be violated even in the interest of crime detection. Second, in view of dedefendants' cooperation, publicity could readily have been avoided. The practice of arraigning a defendant in Chambers is not unknown.

■■ The rule renders incompetent evidence even though voluntarily given after the time has expired within which the accused should have been arraigned.[13] However, subsequent illegal detention does not rule out or render invalid statements previously and voluntarily made.[14] Since the detention of the defendants after 10:30 o'clock on August 3rd constituted unnecessary delay, the motion is granted as to these defendants only to the extent that all evidence derived as a result of the presence of the customs agents in the defendants' apartment from 10:30 o'clock on August 3rd up to the execution of the search warrant at or about 10:00 a. m. on August 4th is suppressed.

We next consider defendants' motion to suppress the evidence obtained as a result of the warrant authorizing search of the defendants' apartment which was executed at or about 10:00 a. m. August 4, 1954.

■ The defendants urge that the warrant was invalid because the affidavit upon which it was issued failed to make a sufficient showing of probable cause. While a search warrant issued on mere suspicion or belief is invalid,[15] probable cause for issuance of a warrant does not require that the facts shown in the affidavit constitute legal evidence sufficient to convict. "Probable cause exists where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of· reasonable caution in the belief that' an offense has been or is being committed"[16] and that property used in the commission of the offense is to be found at the place to be searched.[17]

■ The affidavit contains more than mere allegations on information and belief. It sets forth that when the defendants were arrested on August 2, 1954 they were in possession of a wooden case in which was concealed $200,000 worth of diamonds which had been imported into the United States in violation of law; that the same foreign confidential source who had furnished the information concerning the particular wooden case had also advised that the defendants had received eight or nine

---

12. "The defendants' admissions as to the receipt of prior parcels was made at Varick Street promptly after their arrest." Government's Brief in Opposition, p. 8.

13. McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; Upshaw v. United States, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100; United States v. Walker, 2 Cir., 176 F.2d 564, 567.

14. United States v. Mitchell, 322 U.S. 65, 70, 64 S.Ct. 896, 88 L.Ed. 1140; United States v. Leviton, 2 Cir., 193 F.2d 848, 853.

15. Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159.

16. Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879.

17. Washington v. United States, 92 U.S. App.D.C. 31, 202 F.2d 214; United States v. Heitner, 2 Cir., 149 F.2d 105; United States v. Old Dominion Warehouse, 2 Cir., 10 F.2d 736, 738.

prior shipments of contraband diamonds, one as recently as July 19, 1954.[18] Thus, the verity of the confidential agent's information had been confirmed by defendants' receipt of the case containing the contraband diamonds. In view of the proven accuracy of the overseas information with respect to the intercepted shipment, and the large size of that shipment, it can hardly be said that a reasonably cautious man would not be warranted in the belief that contraband diamonds or records pertaining to them would be found in the home, or any other place exclusively under the control, of the persons who were the alleged culprits.

■ The defendants' further contention that the warrant, as distinguished from the affidavit upon which it was based, is invalid for failure to state the particular probable cause for its issuance is equally without merit. The requirement of Rule 41(c) that the warrant "shall state the grounds or probable cause for its issuance" was complied with by the Commissioner's finding that "a quantity of diamonds, containers thereof, and/or records of transactions relating to said diamonds" were concealed in the apartment. There is nothing in the rule which requires the Commissioner in issuing a warrant to repeat all the evidence presented in support of the application. Indeed, the warrant in this instance closely follows Form 15, Federal Rules of Criminal Procedure, Appendix of Forms, 18 U.S.C.A.

■ As to the defendants' further contention that the warrant is invalid because it was not seasonably executed, nothing more need be said than that the warrant was executed in two days, well within the period specified in Rule 41(d), which permits ten days.[19]

■ Finally, the defendants insist that the search was invalid because they were never given a receipt for the items seized. While some authority exists for the proposition that failure to give a receipt invalidates an otherwise lawful search,[20] the weight of authority is to the contrary.[21] In Giacolone v. United States, 9 Cir., 13 F.2d 108, cited with approval by the Supreme Court in McGuire v. United States, 273 U.S. 93, 97, 47 S.Ct. 259, 71 L.Ed. 556, the court said, "If the search warrant was valid and the original entry lawful, we cannot agree with the contention that the search was rendered unlawful by the mere failure of the officers to leave a copy of the warrant and a receipt for the property taken, or by the destruction of a large portion of the property found on the premises."[22] I am of the view that this statement sets forth the sounder rule.

While it appears that for some time defendants have been in possession of an inventory of the property seized, the order to be entered shall contain a provision that a receipt for the property taken be furnished to the defendants or their attorneys within five days.

The defendants also seek to suppress evidence obtained as a result of a search of Mrs. Klapholz' safe deposit box at the Dollar Savings Bank made pursuant to a search warrant. Many of their objec-

---

18. The affidavit here seems at least as strong as the one held sufficient to support the warrant involved in United States v. Kirschenblatt, 2 Cir., 16 F.2d 202, 51 A.L.R. 416.

19. Murby v. United States, 1 Cir., 2 F.2d 56; Benton v. United States, 4 Cir., 70 F.2d 24.

20. Murby v. United States, 1 Cir., 293 F. 849.

21. McGuire v. United States, 273 U.S. 93, 47 S.Ct. 259, 71 L.Ed. 556; Giacolone v. United States, 9 Cir., 13 F.2d 108; Hurley v. United States, 1 Cir., 300 F. 75; United States v. Clark, D.C.S.D.Ala., 298 F. 533.

22. 13 F.2d 108, at page 109.

tions are the same as those urged against the search of the apartment and are equally lacking in merit. Indeed the government's position as to this search is strengthened by the affiant's assertion that Mrs. Klapholz had admitted receipt of prior shipments of contraband diamonds.

The defendants advance the additional contention that the warrant was defective because it failed to specify that diamonds were concealed in the safe deposit box rather than in some other place. Considering the nature of the objects of the search, the defendant's admission was sufficient to warrant a search of her premises or any other place under her exclusive control. One can hardly imagine a more likely place for concealment of diamonds than a safe deposit box.

Lastly, defendants insist that even if the warrant was valid, the diamonds taken from the safe deposit must be returned on the theory that diamonds are not *per se* contraband, and no showing has been made that the ones seized were liable to duties and hence contraband. In view of the possession by the defendants of concealed and undeclared diamonds at the time of their arrest, and the admissions of Mrs. Klapholz establishing the verity of the information supplied by the foreign informant, it cannot be said that the diamonds found in the safe deposit box were neither the fruits nor instrumentalities of the defendants' unlawful activities. The plausible relation between the crime charged and the item seized distinguishes this case from In re Ginsburg, 2 Cir., 147 F.2d 749.[23]

The motions are granted only to the extent indicated herein; otherwise denied.

Settle order on notice.

23. Cf. United States v. Moore, D.C.S.D. N.Y., 107 F.Supp. 393.