**UNITED STATES of America**

v.

**James F. ANDERSON, Appellant.**

**Nos. 72–2074, 72–2113.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 26, 1973.

Decided Jan. 4, 1974.

Matthew F. Medeiros, Washington, D. C., with whom John S. Koch, Washington, D. C. (both appointed by this Court) was on the brief, for appellant.

Paul L. Friedman, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S.

Atty., John A. Terry, Charles E. Brookhart and Barry W. Levine, Asst. U. S. Attys., were on the brief, for appellee.

J. Patrick Hickey, Washington, D. C., filed a brief on behalf of Public Defender Service as amicus curiae, urging reversal.

Before TAMM, MacKINNON and ROBB, Circuit Judges.

ROBB, Circuit Judge:

Appellant Anderson was indicted in eight counts. The first six counts alleged armed robbery, robbery and assault committed against Marion Hunter and Eugenia Brennan on March 11, 1972. The seventh and eighth counts charged Anderson with assault to commit robbery while armed and assault to commit robbery on April 1, 1972, the victim being Missouri Rosebrough. The District Court having granted a motion to sever, 352 F.Supp. 33 (D.D.C.1972), Anderson was tried on counts 7 and 8 on September 11, 1972, and found guilty of assault with intent to commit robbery while armed. For this offense he was sentenced to a term of two to six years, and he appeals. (No. 72–2074).

On November 6 Anderson was tried on the remaining six counts and found guilty on two counts of armed robbery and two counts of assault with a dangerous weapon. The District Court imposed sentences of one to three years on each count, the sentences to run concurrently with each other, but consecutively to the sentences previously imposed on counts 7 and 8. He appeals. (No. 72–2113). The two cases have been consolidated in this court. With the permission of the court the Public Defender Service has filed a brief amicus curiae in No. 72–2113, urging reversal of the conviction on the charges of armed robbery and assault on March 11, 1972.

No. 72–2074—The September 11 Trial (The Missouri Rosebrough Case— Offenses of April 1, 1972)

Prior to selection of the jury, the prosecutor, at the request of appellant's counsel, made a proffer concerning the identification of appellant by Mrs. Missouri Rosebrough: "[S]he told the police right off that it was Anderson, that she knew him from being in the apartment building, and the police then went upstairs, made the arrest and brought him down. . . . [A]nd she made the identification." Appellant's counsel responded, "Mr. Anderson, when he testifies, he will acknowledge that he knows her and does live in the same building." He also stated: "I'm satisfied that my investigation would support the identification of Miss [sic] Missouri Rosebrough. . . . I proffer this to the Court to avoid the need for a full hearing." The court ruled that the witness could make an in-court identification of appellant because she had a source independent of the on-the-scene viewing, "particularly the matter of his being a tenant in the building known to her".

Mrs. Rosebrough testified that she lived on the first floor of an apartment house at 1420 Clifton Street, N.W., and the appellant lived on the third floor. For a year she had been seeing him around the apartment; "he would often be standing, every day and every night when I come from work, I would see him standing out in the hall." Shortly after midnight on April 1, 1972 she and Mrs. Alberta Stephens were walking through an alley to the back entrance of the apartment building when Mrs. Rosebrough noticed Anderson walking behind them. She looked back several times, recognized Anderson, and said, "Oh, that's the Anderson brother." When she reached the apartment door and was about to take out her key Anderson walked up. She thought he was going to the apartment but instead he produced a pistol and demanded her money. She said, "What money?" and then "I just hauled off and hit him with my fist and hollered, and he ran down the steps and then went on down the alley."

Mrs. Rosebrough testified that while the attempted robbery was in progress she was no more than three feet from Anderson, that there was a light on the

back porch and "real bright" parking lights in the alley, and she was able to get a good look at Anderson's face.

After the attempted robbery, because Mrs. Rosebrough was extremely nervous, she stayed in her apartment all night. "I couldn't call the police because I was just too nervous, and I couldn't know whether he came back in the front door or what, and if I called the police I would have had to leave my apartment from the back and walked to the front". She finally did call the police, and after they arrived around 9:00 A.M. she described to them what her assailant was wearing: a black shirt, a trench coat and dark trousers.

Acting on Mrs. Rosebrough's report the police went to Apartment 308, looking for James Anderson, found him dressed in a black shirt and dark trousers, and took him down in the elevator. When the elevator reached the first floor Mrs. Rosebrough was standing nearby in the hall and the police asked her if she knew Anderson. She replied, "This is the guy who robbed me—who tried to rob me". All this evidence came in without objection.

The testimony of Mrs. Alberta Stephens corroborated Mrs. Rosebrough's account of the assault and attempted robbery, but Mrs. Stephens was unable to identify the appellant.

The defense was an alibi, that Anderson had returned to his apartment at 9:00 o'clock in the evening on March 31 and had not left until he was arrested at 9:00 the following morning. He admitted that he knew Mrs. Rosebrough because she lived in the same apartment building. On cross examination the prosecutor confronted Anderson with a handwritten statement given to the police at the time of his arrest, in which he said he had not arrived home until 12:55 A.M. on April 1. Anderson admitted that the statement and the signature were his.

Notwithstanding the concession of trial counsel, and the absence of any objection at trial, appellate counsel now contends that it was plain error to admit evidence of the identification made by Mrs. Rosebrough at the time of Anderson's arrest. Appellate counsel argues that this confrontation was impermissibly suggestive, citing McRae v. United States, 137 U.S.App.D.C. 80, 420 F.2d 1283 (1969). Counsel also contends that the confrontation violated the police regulation providing: "If a suspect is arrested within 60 minutes of an alleged offense and within an area reasonably proximate to the scene of the crime, he shall be returned to the scene of the offense . . . for identification of the suspect." The argument is that Anderson was not arrested within sixty minutes of the alleged offense.

We think the appellant's attack on the identification must fail. The vice of a one-man confrontation is of course that it may be suggestive and increase the likelihood of misidentification. Neil v. Biggers, 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). In this case, however, Mrs. Rosebrough knew Anderson well so there was no danger of mistaken identification. The obvious purpose of the confrontation was to make certain that the police had arrested the man named to them by Mrs. Rosebrough.

The police regulation cited by the appellant is not a rule of evidence, and in any event does not fit the facts of this case.

The defendant's handwritten statement, used to impeach his testimony at trial, was destroyed by fire in the office of the Clerk of the United States District Court, and a copy cannot be found. The appellant argues that the loss of this paper requires reversal of his conviction. Since the statement was not introduced in evidence at the trial, but was used only to impeach the appellant's testimony, there is nothing to his point.

In charging the jury the district judge said that an important issue in the case was "the identification of Mr. Anderson as the perpetrator of these

particular crimes" and that the defendant must be acquitted unless the jury was convinced beyond a reasonable doubt that he "was the person who committed these crimes". There was no objection to the charge, but appellant's counsel now claims that this part of the charge assumed that a crime had been committed and was therefore prejudicial. We think the point evaporates when the challenged statements are taken in the context of the entire charge.

#### No. 72–2113—The November 6 Trial Offenses of March 11, 1972

Immediately after Anderson was arrested on April 1, 1972 in the Rosebrough case, a criminal complaint against him was filed and he was arraigned before Magistrate Burnett on April 3. (April 1 was Saturday). The Magistrate appointed counsel and set bond. The government submitted a motion for an *Adams* lineup and requested the Magistrate to sign a lineup order. Adams v. United States, 130 U.S.App.D. C. 203, 399 F.2d 574 (1968), cert. denied, 393 U.S. 1067, 89 S.Ct. 722, 723, 21 L.Ed.2d 710 (1969). The Magistrate was informed that the government intended to place Anderson in a lineup in the Rosebrough case and "for one or more armed robberies" one of which had occurred in the same block. The government refused to make any further proffer. The Magistrate denied the government's motion for an *Adams* lineup but granted its motion for a *Wade* lineup for the April 1 offense. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). On April 5 Anderson and his appointed counsel attended a lineup. No witnesses to the April 1 offense were present; Mrs. Stephens, one of the witnesses, was to have attended but did not. However, Mrs. Marion Hunter and Mrs. Eugenia Brennan viewed the lineup and identified Anderson as the man who had held them up on March 11, while they were waiting for the elevator in the lobby of 1420 Clifton Street.

A motion to suppress testimony concerning the lineup identification by Mrs. Hunter and Mrs. Brennan was denied by the District Court. United States v. Anderson, 352 F.Supp. 33 (D. C.D.C. 1972).

The appellant and *amicus* contend that since the Magistrate declined to sign an *Adams* order, the viewing of the lineup by Mrs. Hunter and Mrs. Brennan, victims of the March 11 robbery but not connected with the assault on Mrs. Rosebrough, was contrary to the doctrine of the *Adams* case and violative of Anderson's fourth amendment rights. We disagree.

In the *Adams* case the defendant, arrested for one crime, was placed in a lineup and identified by victims of another crime. He was convicted of the second crime. He had not been presented to a magistrate at the time of the lineup at which he was identified; on the contrary, presentment had been delayed for the purpose of putting him in the lineup. The conviction was reversed because of the failure to present the defendant to a magistrate as required by Rule 5(a), Fed.R.Crim.P. In the case at bar however the lineup was held after presentment. The *Adams* decision is therefore not controlling.

Relying upon Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), the *amicus* contends that "an arrested citizen, like any other citizen, cannot be made to stand in a lineup for a crime other than the one charged against him except upon a finding of probable cause by a judicial officer." We do not agree. That Anderson was lawfully in custody distinguishes his case from the *Davis* case; as the Supreme Court recently observed, "*Davis* is plainly inapposite to a case where the initial restraint does not itself infringe the Fourth Amendment." United States v. Dionisio, 410 U.S. 1, 11, 93 S.Ct. 764, 770, 35 L.Ed.2d 67, 77–78 (1973).

Anderson was lawfully in custody and there is no contention that the lineup at which he was identified violated due process. Given these premises his constitutional rights were not infringed when he was viewed by victims of the March 11 robbery; as the District

Court correctly concluded, so long as timely presentment is made before a magistrate and the lineup comports with due process, "the Government may place [a suspect] in a lineup for any number of offenses it chooses without prior court authorization . . . ." 352 F.Supp. at 35. *See* United States v. Eley, 287 A.2d 830 (D.C.Ct.App.1972). *Cf.* United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); United States v. Mara, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973); United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). *See also,* Doss v. United States, 431 F.2d 601 (9th Cir. 1970).

■ The judgments and sentences for assault with a dangerous weapon must be vacated, since we have held that assault with a dangerous weapon is included in armed robbery. United States v. Johnson, 155 U.S.App.D.C. 28, 475 F.2d 1297 (1973). With this modification the judgments are

Affirmed.