**UNITED STATES of America**

v.

**Robert N. PERRY, Appellant.**

**No. 72–1735.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 4, 1973.

Decided Feb. 22, 1974.

Rehearing and Rehearing En Banc
Denied Oct. 15, 1974.

McGowan, Circuit Judge, filed a separate statement, concurred in by Bazelon, Chief Judge, and Wright, Leventhal, and Robinson, Circuit Judge on denial of rehearing en banc.

W. Gary Kohlman, Public Defender Service, Washington, D. C., for appellant.

William M. Brodsky, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and John T. Kotelly, Asst. U. S. Attys., were on the brief, for appellee.

Before ROBB and WILKEY, Circuit Judges, and VAN PELT,* United States Senior District Judge for the District of Nebraska.

PER CURIAM:

On December 29, 1970 three men robbed a Peoples Drug Store in Washington. One of the men confronted Bret H. Womack, employed by Peoples as a uniformed special policeman, pressed a .45 caliber pistol against Womack's side, and took his revolver. Another man took $137 from the possession of Mrs. Gladys Cody, an employee of the store. The third robber went to the rear of the store where he pointed a pistol at LeRoy Bradley, the store's pharmacist and manager, forced Bradley to open the store's safe, a cash drawer and a cash register, and took the money they contained, approximately $683.

On January 6, 1971 the appellant Perry was arrested on a warrant charging that he robbed a federally insured savings and loan association on December 18, 1970. Arraigned on this charge, he

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

was ordered to be placed in a lineup and at this lineup he was identified by Bradley as the man who held the gun on him at Peoples Drug Store.

A juvenile was arrested near the scene of the robbery and charged as the robber who took Womack's revolver. The third robber was never identified.

Perry was indicted and tried on an indictment in nine counts. Counts 1, 2 and 3, naming Womack as the victim, charged robbery while armed, robbery and assault on Womack with a pistol. The property taken from Womack was alleged to be a pistol, the property of Peoples Drug Stores. Counts 4, 5 and 6 identified Bradley as the victim and charged armed robbery, robbery and assault with a pistol. The property alleged to have been taken from Bradley was $683 belonging to Peoples Drug Stores. Counts 7, 8 and 9 named Gladys Cody as the victim and charged armed robbery, robbery and assault with a pistol, the property alleged to have been taken being $137 belonging to Peoples Drug Stores.

At trial Womack and Mrs. Cody were unable to identify Perry, but Bradley positively identified him as the man who came to the rear of the store, held the pistol on Bradley and took the money from the safe, cash drawer and register. The jury found Perry not guilty on the counts charging the armed robbery of Womack and assault with a pistol on Womack (counts 1 and 3) and not guilty on the counts charging the armed robbery of Gladys Cody and assault with a pistol on Gladys Cody (counts 7 and 9). They were unable to agree on count 2 charging the robbery of Womack, count 8 charging the robbery of Gladys Cody, and counts 4, 5 and 6 in which Bradley was identified as the victim. Accordingly the court discharged the jury and declared a mistrial.

The case was retried before another jury. Before the retrial, Womack having disappeared, count 2 of the indictment naming him as a victim was dismissed. The second jury found Perry guilty of the armed robbery of Bradley as alleged in count 4; this verdict of course subsumed the charge of robbery alleged in count 5. On the counts charging assault with a pistol on Bradley and Gladys Cody and the count charging the robbery of Gladys Cody, the verdict was not guilty. Perry appeals from the judgment entered on the verdict of guilty of the armed robbery of Bradley.

Relying on Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), Perry contends that "by virtue of the outright acquittals received in the first trial in [sic] the counts involving Mrs. Cody and Officer Womack, the doctrine of collateral estoppel precluded reprosecution of appellant for his alleged involvement in the December 29, 1970 robbery."

We think the appellant misapprehends the purport of the decision in Ashe v. Swenson. In that case Ashe was tried for the robbery of Donald Knight, one of six participants in a poker game. Ashe was acquitted. Later he was brought to trial again, this time for the robbery of another participant in the poker game, a man named Roberts. The Supreme Court held that the second prosecution was barred by collateral estoppel. The Court said the only issue in dispute before the jury at the first trial was whether Ashe had been one of the robbers. "And the jury by its verdict found that he had not. The federal rule of law, therefore, would make a second prosecution for the robbery of Roberts wholly impermissible." (397 U.S. at 445, 90 S.Ct. at 1195). In the case before us, however, there was no finding by the jury at the first trial that Perry was not one of the robbers; the only finding was that he had not assaulted and robbed Womack and Gladys Cody with a pistol. On the counts alleging the robbery of Womack and Gladys Cody the jury disagreed and made no findings, and on all the counts relating to Bradley the jury also disagreed. Perry's presence as one of the robbers was not inconsistent with these results. Consequently, this case is controlled, not by Ashe v. Swenson, but

by United States v. Scott, 150 U.S.App. D.C. 323, 464 F.2d 832 (1972). In Scott's case he was found not guilty of armed robbery, but the jury was unable to reach a verdict on another count charging unarmed robbery. The court declared a mistrial. Retried before a second jury, Scott was found guilty of unarmed robbery and we affirmed the conviction.

■ Perry testified in his own defense and on cross examination was impeached by evidence of his conviction of entering a savings and loan association with intent to commit robbery. His counsel did not object to the cross examination but asked only that the court instruct the jury on "the use of the criminal record." (Tr. 111). This the court did immediately (Tr. 112) and the instruction was repeated in the court's charge. (Tr. 139). There was no prejudicial error.

■ The appellant contends that his Fourth Amendment rights were violated because he was identified by Mr. Bradley at a lineup held pursuant to his arraignment on a charge other than the drug store robbery charge. This contention is answered by Anderson v. United States, 160 U.S.App.D.C. 217, 490 F.2d 785 (1974).

The judgment is

Affirmed.

Separate statement by McGOWAN, Circuit Judge, concurred in by Bazelon, Chief Judge, and Wright, Leventhal and Robinson, Circuit Judges, on denial of rehearing en banc.

I have not called for a vote on the suggestion for rehearing *en banc* filed in this case for the reason that the precise facts shown by the record do not indicate any violation of the Fourth Amendment. The conviction from which this appeal is taken was for the armed robbery of a Peoples Drug Store occurring on December 29, 1970. One week later appellant was arrested on a warrant charging him with the robbery of a savings and loan association on December 18, 1970. When he was arraigned pursuant to this arrest, the Government asked the magistrate to authorize a line-up at which appellant could be viewed by an eyewitness of the earlier robbery at the Peoples Drug Store.[1] The Government represented in support of this application that an "Identification by Photo ID" had been made of appellant in connection with the drug store robbery. On the basis of this showing the magistrate authorized the line-up at which appellant was positively identified by an eyewitness to that robbery.

On these facts I have no doubt of the propriety of the line-up. The Government's course of action appears to have been entirely reasonable in the circumstances, and the judicial authority it sought was properly forthcoming on the showing made. Indeed, the Government, in seeking judicial authorization, showed a commendable sensitivity to the Fourth Amendment protections which have always been thought to surround the person of one in lawful custody or out.

What is less clear to me is the soundness of the authority relied upon by the division for the result it reached. The division's only comment in its opinion was as follows:

The appellant contends that his Fourth Amendment rights were violated because he was identified by Mr. Bradley at a lineup held pursuant to his arraignment on a charge other than the drug store robbery charge. This contention is answered by Anderson v. United States, 160 U.S.App.D.C. 217, 490 F.2d 785 (1974).

In *Anderson* error was claimed in the conviction of the appellant for an armed robbery allegedly committed on March 11, 1972. Anderson was arrested on April 1, 1972 and charged with assault with intent to commit robbery while

---

[1]. Appellant's alleged role in the savings and loan robbery was that of driver of the getaway car. Since there were no eyewitnesses to this alleged participation, there was no occasion to hold a line-up in respect of it.

armed on that same date, that is to say, April 1. Upon Anderson's arraignment before the magistrate pursuant to that arrest, the Government informed the magistrate that it intended to place Anderson in a line-up for the offense for which he was arrested and also " 'for one or more armed robberies' one of which had occurred in the same block." When the Government refused to proffer any further information than this, the magistrate denied the motion for an *Adams* order, but did authorize a line-up to be held for the April 1 offense.[2]

The line-up so authorized was held on April 5. No witnesses of the April 1 offense appeared, but the two victims of the March 11 offense did appear and identified Anderson. A motion to suppress these identifications was denied by the District Court and that action was sustained by a division of this court on appeal. The theory embraced in support of this result was that, since Anderson was lawfully in custody, he could be viewed in the line-up for the crime for which he was arrested by victims of a different offense, even without prior judicial authorization and, indeed, in this case, in defiance of the magistrate's refusal to give the authority expressly sought by the Government for this purpose. No suggestion for rehearing *en banc* was ever filed in the *Anderson* case, nor was certiorari sought in the Supreme Court, despite the fact that it appears to go substantially beyond what this court has countenanced with respect to the exhibition in line-up of persons lawfully in custody.

The division that decided *Anderson* relied on what seems to me a debatable proposition at best, namely, that line-ups of persons lawfully in custody can in no circumstances constitute "unreasonable searches and seizures." The theory is that once a detainee has lawfully been subjected to the initial seizure of arrest, he retains no Fourth Amendment protection against subjection of his person to witness confrontations, however unrelated to the crime for which he was arrested.

The district judge in *Anderson*, denying the motion to suppress, carefully analyzed the basis for the asserted loss by lawful detainees of Fourth Amendment protection. *See* 352 F.Supp. 33 (D.D.C.1972). He was of the opinion that our decision in the *Adams* case, excluding the fruits of a line-up during detention, rested solely on the fact that an "unnecessary delay" under Fed.R. Crim.P. 5(a) made the detention illegal. Were a presentment made without delay, detention would not be illegal and neither, so he opined, would a line-up held during that detention, whether it was with, without, or even in the face of a *denial* of, the authorization of the magistrate at the presentment. In this view, an *Adams* order authorizing "other crime" line-ups is necessary to their legality only in the sense that it could extend or define the lawful period of detention and thus allow the line-ups to take place within it.[3]

Whether or not prior judicial approval in the form of an *Adams* order is necessary to legalize an "other crime" line-up is an issue which our cases cited by the district judge have indeed left in some doubt. On the one hand, we expressed approval in United States v. Allen, 133

2. The so-called *Adams* order refers to a procedure which this court first held out as a possibility in Adams v. United States, 130 U.S.App.D.C. 203, 399 F.2d 574, cert. denied sub nom., Roots v. United States, 393 U.S. 1067, 89 S.Ct. 722, 21 L.Ed.2d 710 (1968), and which it sustained in United States v. Allen, 133 U.S.App.D.C. 84, 408 F.2d 1287 (1969), and subsequent cases.

3. In *Adams* the court recognized the contingency that at presentment the detainee might be released pending trial, thereby apparently circumventing the holding of a line-up or line-ups for any purpose; and that the purpose of the *Adams* order, as this court conceived it, was to provide judicial authorization of a limited intrusion upon the liberty so acquired in order that line-ups might be held. There is no dougt that this was a purpose underlying our suggestion of the *Adams* order approach; and, if it be taken to be the only one, then it can be regarded as unrelated to whether the line-ups involve other crimes.

U.S.App.D.C. 84, 408 F.2d 1287 (1969), of a proposed "other crime" line-up partly on the ground that it had been authorized in an *Adams* order. On the other hand, in United States v. Miller, 145 U.S.App.D.C. 312, 449 F.2d 974 (1971), we approved an "other crime" witness identification made *prior* to presentment, reasoning that, though the presentment followed the identification, it did not take place after "unnecessary delay" within the contemplation of Rule 5(a). *See also* Williams v. United States, 136 U.S.App.D.C. 158, 419 F.2d 740 (1969) (*en banc*), suggesting that if counsel were present at the line-up, a detainee could have no objection to its taking place before presentment.

Even if we were to conclude that prior judicial authorization in the form of an *Adams* order is not a precondition to the legality of "other crime" line-ups, the distinct question would remain whether the Fourth Amendment nonetheless imposes some limitations on the line-ups to which a detainee can be subjected.[4] Our approval in *Allen* of an *Adams* order allowing line-ups for other crimes involving a similar *modus operandi* is, of course, consistent with the existence of some such Fourth Amendment limitations. The *Williams* case, *supra*, really did not pose the question, since the line-up there was for the crime for which the detainee had been lawfully arrested. In *Miller*, we grounded our approval of a pre-presentment witness confrontation not only on the absence of "unnecessary delay" in the presentment, but also on the fact that "probable cause existed for the appellant's arrest on the [two 'other crime' charges] because of the similarities in the three crimes." 449 F.2d at 982.

*Anderson* also goes well beyond what the Supreme Court has yet defined to be the limits of exposure of arrestees to line-up viewing. It is, of course, conceivable that the division in *Anderson* has anticipated accurately the ultimate reach which the Supreme Court may give to the approach seemingly underlying such a recent decision as United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Prophesying the ups and downs of the Fourth Amendment in the Supreme Court is, however, a chancy business. Since *Robinson*—and post-*Anderson*—the Court has upheld a warrantless seizure of an arrestee's clothing the morning following his arrest. United States v. Edwards, 415 U. S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974). This decision was based, however, on the Court's view that the seizure was within the exception for searches and seizures incident to arrest. The Court was careful to point out that "we do not conclude that the warrant clause of the Fourth Amendment is never applicable to postarrest seizures of the effects of an arrestee. . . .," and that "[h]olding the Warrant Clause inapplicable in the circumstances does not leave law enforcement officers subject to no restraints. This type of police conduct 'must [still] be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures.' . . ." United States v. Edwards, *supra* at 808 & n. 9, 94 S.Ct. at 1239 and n. 9.

To say, in the face of these observations by the Supreme Court, that a person in lawful custody for one crime may be freely and indiscriminately exposed to line-up viewing in respect of which there neither has been nor will be any scrutiny by judicial authority of reasonableness under the circumstances, is a very long step indeed. It requires rigorous analysis in the context of a fully developed evidentiary record, at least in the absence of more plainly controlling authority than was relied upon in *Anderson*.

---

4. Requiring a prior *Adams* order is certainly not the only means of imposing Fourth Amendment limitations in this context. The Fourth Amendment might be thought to require that subsequent line-ups involving other crimes be subject to challenge by counsel at the line-up as unreasonable for lack of any relationship to the detainee, and that the issue so raised be preserved for determination by the trial court.