## STATE OF NEW JERSEY, PLAINTIFF, v. ANDREW FOY, DEFENDANT.

Superior Court of New Jersey
Law Division (Criminal)

Decided October 15, 1976.

380

382

*Mr. John J. Trombadore,* First Assistant Deputy Public Defender, for defendant (*Mr. Stanley C. Van Ness,* Public Defender of New Jersey, attorney).

*Mr. Leonard N. Arnold,* First Assistant Prosecutor, for the State of New Jersey (*Mr. Stephen R. Champi,* Somerset County Prosecutor, attorney).

MEREDITH, J. S. C. This matter presents the important issue concerning the scope of the state prosecutor's power to compel an individual who has been arrested to appear in a lineup for other unrelated crimes. Andrew Foy and Zachery Foy were arrested on September 23, 1976 and charged with the armed robbery of Krauszer's Dairy Store in Franklin Township, New Jersey. While they were in jail on this charge the prosecutor attempted to hold a lineup where victims of five other Franklin Township robberies would have an opportunity to view both individuals. Andrew and Zachery Foy refused to participate in the lineups, claiming that there was no probable cause linking them to these robberies. The prosecutor then filed this motion and oral argument was heard on October 1, 1976. At oral argument he produced an affidavit by Detective Grogan which set forth the State's reasons for holding the proposed lineups. The affidavit is reproduced in the margin.[1] After reading the

---

[1] Daniel Grogan, of full age, being duly sworn upon his oath, deposes and says that:

1. I have read the affidavit of First Assistant Prosecutor Leonard N. Arnold, given on September 29, 1976, which affidavit was given in support of an application to compel Andrew Foy and Zachery Foy to participate in a lineup.

2. I am the detective currently responsible for the investigation of the armed robberies referred to in Paragraph 3(a) through 3(e) in Mr. Arnold's affidavit.

3. Andrew Foy and Zachery Foy are currently incarcerated in the Somerset County Jail on a charge of having robbed the Krauszer's Dairy Store, Hamilton Street, Franklin Township, on September 23, 1976. They were arrested shortly after that robbery and were identified by the victims within 10 to 15 minutes after the armed

affidavit, counsel for defendants admitted, and this court agrees, that sufficient justification to place the Foys in a lineup was established for the September 23, 1976 robbery (par. 3), the September 21, 1976 robbery (par. 4), and the September 18, 1976 robbery (par. 6). Defense counsel attacked the allegations in paragraphs 5, 7 and 8 as insufficient to establish a nexus linking either of the Foys to the alleged crimes. The prosecutor countered by asserting, in the alternative, that the requisite nexus was established and, if not, that since the individuals were already incarcerated, albeit on unrelated charges, the fact of custody deprived them from objecting to the lineups.

robbery as being the robbers. In addition, Andrew Foy's car, a 1963 Cadillac, New Jersey Registration #127FCE was positively identified as being used as the getaway car.

4. Andrew Foy and Zachery Foy are currently suspects in the armed robbery of the Krauszer's Dairy Store, Easton Avenue, Franklin Township, on September 21, 1976, because the descriptions given by the witnesses to the armed robbery fit Andrew Foy and Zachery Foy. In addition, two black males were seen running from the store after the robbery and the police were given the following license numbers as being that of the car in which they escaped: New Jersey Registration CFE127 and 127 CFE. In fact, Andrew Foy's car bears Registration No. 127FCE.

5. Andrew Foy and Zachery Foy are linked to the armed robbery of the Somerset Farms Dairy Store which occurred on September 12, 1976, by virtue of the fact that they fit the descriptions of the robbers (although they are slightly older than the ages given by the victims) and a 2″ gun was used which is the same type of weapon recovered from their home following their arrest for the robbery of the Krauszer's Dairy Store on September 23, 1976.

6. Andrew and Zachery Foy are linked to the Arthur Treacher's Fish and Chips [robbery], which occurred on September 18, 1976, because the descriptions given by the witnesses fit Andrew Foy and Zachery Foy. In addition, a 2″ gun was used in this armed robbery. In addition, in this robbery, as well as the two robberies of the Krauszer's Dairy Stores, referred to above, the robbers forced the victims to the ground at gun point.

7. Zachery Foy is linked to the armed robbery of Robert Kuntz by virtue of the fact that the victim's description of his assailant matches Zachery Foy.

8. On September 16, 1976, James Rigel was robbed at gun point. Mr. Rigel's description of the robber fits Zachery Foy.

/s/ Daniel Grogan

Because of the importance of the issue involved, the court requested that briefs be submitted and set down October 15, 1976 for further argument. During this period, on October 5, 1976, the court was advised by the prosecutor that Zachery Foy had been released on bail. The prosecutor, recognizing the limited nature of his proofs and the fact that Zachery Foy was now out on the street, withdrew his request to compel Zachery Foy to appear in a lineup for the crimes alleged in paragraphs 5, 7 and 8 of Detective Grogan's affidavit. Andrew Foy, however, was unable to post bail and the prosecutor's motion with respect to the Somerset Farms robbery alleged in paragraph 5 of the affidavit is still before this court.

While the prosecutor admits that he has produced insufficient information to have this court order a lineup where the defendant is not already in custody, he argues that *United States v. Anderson*, 160 *U. S. App. D. C.* 217, 490 *F.* 2d 785 (1974), and related cases clearly authorize the State to do so in this instance. In *Anderson* defendant was arrested in connection with an attempted armed robbery which occurred on April 1, 1972. While in jail on this charge he was placed in a lineup and viewed by victims of a previous robbery. The only similarity between the two robberies was they both took place in the same building. The court, in rejecting defendant's contention that he was made to appear in a lineup without a finding of probable cause, focused on the nature of the Fourth Amendment intrusion. The court held that since the defendant was already in custody, the lineup implicated no additional liberty infringements. Therefore, so long as the lineup itself comported with due process standards, a suspect already in custody could lawfully be placed in a lineup for any number of offenses. *Id.* at 789.[2] See also, *People v. Hodge,* 186

---

[2]The result reached in *Anderson* has been criticized by five of the Circuit Judges for the District of Columbia. In *United States v. Perry*, 164 *U. S. App. D. C.* 111, 504 *F.* 2d 180 (1974), where a

*Colo.* 189, 526 *P.* 2d 309 (Sup. Ct. 1974) (*en banc*) ; *State v. Fierro,* 107 *Ariz.* 479, 489 *P.* 2d 713 (Sup. Ct. 1971) ; *People v. Hall,* 24 *Mich. App.* 509, 180 *N. W.* 2d 363 (Ct. App. 1970), aff'd, 396 *Mich.* 650, 242 *N. W.* 2d 377 (Sup. Ct. 1976).

 This court agrees that the constitutional prohibition against unreasonable search and seizure would not be violated if the State's motion were granted. The act of having one's facial features viewed does not constitute a search, for the Fourth Amendment extends no protection to what a person "knowingly exposes to the public." *Katz v. United States,* 389 *U. S.* 347, 351, 88 *S. Ct.* 507, 511, 19 *L. Ed.* 2d 576, 581 (1967). See also, *Cardwell v. Lewis,* 417 *U. S.* 583, 591, 94 *S. Ct.* 2464, 2469, 41 *L. Ed.* 2d 325, 335 (1974) ; *United States v. Dionisio,* 410 *U. S.* 1, 14, 93 *S. Ct.* 764, 771, 35 *L. Ed.* 2d 67, 79 (1973) ; *United States v. Roders,* 475 *F.* 2d 821 (7 Cir. 1973) ; *In re Toon,* 364 *A.* 2d 1177 (D. C. App., 1976). Nor is the Fifth Amendment's prohibition against self-incrimination implicated. *United States v. Wade,* 388 *U. S.* 218, 87 *S. Ct.* 1926, 18 *L. Ed.* 2d 1149 (1967).

---

similar lineup issue was raised and denied on the basis of *Anderson,* Judge McGowan issued a lengthy statement commenting on the denial of a rehearing *en banc.*

"*Anderson* also goes well beyond what the Supreme Court has yet defined to be the limits of exposure of arrestees to line-up viewing. * * * To say * * * that a person in lawful custody for one crime may be freely and indiscriminately exposed to line-up viewing in respect of which there neither has been nor will be any scrutiny by judicial authority of reasonableness under the circumstances, is a very long step indeed. It requires rigorous analysis in the context of a fully developed evidentiary record, at least in the absence of more plainly controlling authority than was relied upon in *Anderson.*" [at 184]

The Massachusetts Supreme Judicial Court, in *Commonwealth v. Tarver,* 345 *N. E.* 2d 671 (1975), indicated that if presented with a situation similar to the one presently before this court, it would adopt the approach of Judge McGowan. *Id.* at 677. See also, *United States v. Jackson,* 166 *U. S. App. D. C.* 166, 509 *F.* 2d 499, 503, 504 (1974).

This court is also unwilling to rule that the movement of a defendant from his jail cell to the room in which the lineup is conducted constitutes a "seizure" within the meaning of the Fourth Amendment. Incarcerated individuals may validly be subjected to the rules of the prison "so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 *U. S.* 215, 224, 96 *S. Ct.* 2532, 2538, 49 *L. Ed.* 2d 451, 459 (1976). If the administrative transfer of an individual from one prison to another without a prior hearing is constitutionally sanctioned, *Meachum v. Fano*, *supra; Rocca v. Groomes*, 144 *N. J. Super.* 213 (App. Div. 1976), then surely temporary intraprison movement is not constitutionally infirm.

The failure of this court to rule favorably on defendant's motion based on Fourth Amendment criteria is not determinative of the issue. "Even though evidence is not within a testimonial privilege, the due process clause protects against the use of excessive means to obtain it." *United States v. Doe*, 405 *F.* 2d 436, 438 (2 Cir. 1968). Considerations of due process and equal protection greatly concern this court. The equal protection issue is most readily apparent. Although Andrew and Zachery Foy, brothers, were arrested for the same armed robbery charge, only Andrew Foy, or so the prosecutor contends, can still be compelled to appear in a lineup and be viewed by victims of other crimes. The reason for this distinction is not in the heavier quantum of evidence against Andrew Foy, but that Zachery Foy is free on bail. Since Zachery Foy is presently at liberty he may not be temporarily detained except on "articulable facts [sufficient] to permit meaningful evaluation of the reasonableness of the proposed lineup." *Wise v. Murphy*, 275 *A.* 2d 205, 217 (D. C. App. 1971). Thus, it appears that Zachery Foy is able to be beyond the reach of the State merely because his personal finances exceed those of his brother.

The claim that this result would constitute a denial of equal protection has been raised in a number of jurisdictions

and, with the exception of New York, been rejected. *United States v. Anderson,* 406 *F.* 2d 719 (4 Cir.), *cert.* den., 395 *U. S.* 967, 89 *S. Ct.* 2114, 23 *L. Ed.* 2d 753 (1969); *United States v. Evans,* 359 *F.* 2d 776 (3 Cir.), *cert.* den., 385 *U. S.* 863, 87 *S. Ct.* 120, 17 *L. Ed.* 2d 90 (1966); *Rigney v. Hendrick,* 355 *F.* 2d 710 (3 Cir. 1965), *cert.* den., 384 *U. S.* 975, 86 *S. Ct.* 1868, 16 *L. Ed.* 2d 685 (1966); *State v. Fierro,* 107 *Ariz.* 479, 489 *P.* 2d 713 (Sup. Ct. 1971); *People v. Nelson,* 40 *Ill.* 2d 146, 238 *N. E.* 2d 378 (Sup. Ct. 1968); *People v. Stringer,* 129 *Ill. App.* 2d 251, 264 *N. E.* 2d 31 (App. Ct. 1970), aff'd, 52 *Ill.* 2d 564, 289 *N. E.* 2d 631 (Sup. Ct. 1972); *People v. Hall,* 24 *Mich. App.* 509, 180 *N. W.* 2d 363 (Ct. App. 1970), *aff'd,* 396 *Mich.* 650, 242 *N. W.* 2d 377 (Sup. Ct. 1976). But see *People v. Vega,* 51 *A. D.* 2d 33, 379 *N. Y. S.* 2d 419 (App. Div. 1976); *Application of Mackell,* 59 *Misc.* 2d 760, 300 *N. Y. S.* 2d 459 (Sup. Ct. 1969).

*Rigney v. Hendrick, supra,* is the leading case holding that there is no denial of equal protection. In *Rigney* the facts linking the arrested defendant to the unrelated charge were much stronger than those put forth by the prosecutor in the present case. In *Rigney* the defendant was in jail on a robbery charge. Items belonging to the victim of another robbery were then found in the defendant's apartment. Furthermore, the *modus operandi* of that robbery was similar to that used by defendant. Despite the apparent availability of a narrower ground for decision, the dissent indicated that the police had probable cause to arrest for the second robbery charge, the court ruled that an incarcerated individual could not object to being placed in a lineup for uncharged crimes. The court disposed of the equal protection argument by concluding that

Admittedly, there is a classification between those who can and those who cannot make bail. The Constitution, however, permits such a classification, and any differences here, arise solely because of the *inherent characteristics of confinement* and cannot constitute invidious discrimination. [at 715; emphasis supplied]

This court feels that the above cases minimized the dangers inherent in a lineup, regardless of how fairly conducted, and gave insufficient recognition to the status of defendants as pretrial detainees.

There has been widespread recognition both by the courts and by commentators that erroneous identifications of criminal suspects have been a major source of faulty convictions. *United States v. Wade,* 388 *U. S.* 218, 228, 87 *S. Ct.* 1926, 1933, 18 *L. Ed.* 2d 1149, 1158 (1967); Levine & Tapp, "The Psychology of Criminal Identification: *The Gap from Wade to Kirby,*" 121 *U. Pa. L. Rev.* 1079, 1082 (1973); Note, 48 *Temple L. Q.* 780, 794 (1973). Yet, despite the acknowledged unreliability of eyewitness identifications, such identifications are often the determinative issue at trial. There is "little or no effective appeal from the judgment there rendered by the witness — 'that's the man.' " *United States v. Wade, supra,* 388 *U. S.* at 235–236, 87 *S. Ct.* at 1937, 18 *L. Ed.* 2d at 1162.

In *Wade* the Supreme Court provided counsel at post-indictment lineups in an effort to minimize unfair lineup procedures. Other suggestions to guard against the conviction of innocent individuals based on a misidentification include (1) supplying the defense attorney with a copy of the victim's description of the defendant; (2) that there be a minimum of six individuals in the lineup; (3) that all lineup participants wear similar clothing; (4) that only one witness view the lineup at a time, (5) and that a photograph be taken of the lineup. See generally, *State v. Earle,* 60 *N. J.* 550, 552 (1972); 31 *N. J. Practice* § 712 (1976). Note, "Pretrial Identification Confrontation," 45 *Miss. L. J.* 489, 508–510 (1974). This court believes that an additional factor be added — before an individual can be compelled to appear in a lineup as a suspect, there must be some connecting evidence linking him to the crime. See *United States v. Allen,* 133 *U. S. App. D. C.* 84, 408 *F.* 2d 1287, 1289 (1969).

 Defendant in this matter is a pretrial detainee. He has not been convicted of the robbery charge but is incarcerated pending trial. When such an individual is incarcerated and awaiting trial, the fact of confinement does not allow the State to arbitrarily strip him of his personal liberties. *Tyrrell v. Taylor*, 394 *F. Supp.* 9, 19 (E. D. Pa. 1975). The restraints on the liberty of a pretrial detainee must be balanced against the State's *sole* interest in assuring defendant's presence at trial. Unconvicted detainees are individuals who, "but for their inability to furnish bail, would remain at liberty, enjoying all the rights of free citizens until and unless convicted." *Rhem v. Malcolm*, 371 *F. Supp.* 594, 622 (S. D. N. Y.) mod., 507 *F.* 2d 333 (2 Cir. 1974); see *Inmates of Suffolk Cty. Jail v. Eisenstadt*, 360 *F. Supp.* 676, 686 (D. Mass. 1973) aff'd 494 *F.* 2d 1196 (1 Cir. 1974); *Brenneman v. Madigan*, 343 *F. Supp.* 128 (N. D. Cal. 1972); *Hamilton v. Love*, 328 *F. Supp.* 1182, 1191 (E. D. Ark. 1972); *Wilson v. Beame*, 380 *F. Supp.* 1232, 1236 (E. D. N. Y. 1974); *Cudnik v. Kreiger*, 392 *F. Supp.* 305, 311 (N. D. Ohio 1974). This limitation of state control over pretrial detainees is grounded upon the presumption of innocence, the enforcement of which "lies at the foundation of the administration of our criminal law." *Coffin v. United States*, 156 *U. S.* 432, 453, 15 *S. Ct.* 394, 403, 39 *L. Ed.* 481 (1895). See *Stack v. Boyle*, 342 *U. S.* 1, 72 *S. Ct.* 1, 96 *L. Ed.* 3 (1951); Note, "Constitutional Limitations on the Conditions of Pretrial Detention," 39 *Yale L. J.* 941 (1970).

 This court disagrees with the underpinning of the *Rigney* decision where the court rejected the equal protection argument by ruling that any differential treatment of pretrial detainees stemmed from "the inherent characteristics of confinement." *Rigney v. Hendrick, supra*, 355 *F.* 2d at 715.[3]

---

[3]Other courts which have expressed their disagreement with the *Rigney* court's characterization of the status of pretrial detainees

The only factor which would legitimately permit a difference in the treatment of those who are free on bond, while awaiting trial, from those who are detained in jails, while awaiting trial, is the assumed risk of non-appearance of the latter. [*Hamilton v. Love,* 328 *F. Supp.* 1182, 1192 (E. D. Ark. 1972)]

Compelled appearance in a lineup for an unrelated charge bears no connection to the "assumed risk of non-appearance" of the jailed defendant. Therefore, under circumstances where the State could not detain an individual at liberty for lineup purposes, it may not force a pretrial detainee into a similar lineup. To rule otherwise would permit the State to invidiously discriminate against pretrial detainees, primarily the poor and minorities, thereby denying them the equal protection of the laws guaranteed to all individuals under the Fourteenth Amendment of the United States Constitution and inherent in Article I, Paragraph 1 of the New Jersey Constitution. See *People v. Vega,* 51 *A. D.* 2d 33, 379 *N. Y. S.* 2d 419 (App. Div. 1976); *Application of Mackell,* 59 *Misc.* 2d 760, 300 *N. Y. S.* 2d 459 (Sup. Ct. 1969).

 This decision will not frustrate legitimate techniques of criminal investigation. Rather, it is in keeping with a long tradition whereby the court stands as a bulwark against arbitrary state action. A prosecutor, unlike a grand jury, does not have the power to order any individual to appear before him. See *United States v. Dionisio,* 410 *U. S.* 1, 93 *S. Ct.* 764, 35 *L. Ed.* 2d 67 (1973); *United States v. Mara,* 410 *U. S.* 19, 93 *S. Ct.* 774, 35 *L. Ed.* 2d 99 (1973); *In re Toon,* 364 *A.* 2d 1177 (D. C. App. 1976). To detain a person for the purpose of conducting a lineup requires, at a minimum, a "well-grounded suspicion" that the individual is the perpetrator of the alleged crime. *See e. g., State v. Grijalva,* 111 *Ariz.* 476, 533 *P.* 2d 533 (Sup. Ct. 1975); *Merola v. Fico,* 81 *Misc.* 2d 206, 365 *N. Y. S.* 2d

include *Anderson v. Nosser,* 438 *F.* 2d 183, 190 (5 Cir. 1971); *Brenneman v. Madigan,* 343 *F. Supp.* 128, 136 n. 2 (N. D. Cal. 1972); *Hamilton v. Love,* 328 *F. Supp.* 1182, 1192 (E. D. Ark. 1972).

743 (Sup. Ct. 1975); *Wise v. Murphy,* 274 *A.* 2d 205 (D. C.
App. 1971). The validity of this "well-grounded suspicion"
must be tested by a neutral and detached magistrate; an
affidavit by the prosecuting attorney attesting to its exis-
tence will not suffice. *Wise v. Murphy, supra,* 275 *A.* 2d
at 217. The affidavit submitted in support of the State's
request to compel a lineup fails to meet this standard.

██ ██ Sound policy reasons underlie this two-step pro-
cedure. In every lineup there is a potentiality of misiden-
tification. "It is a fact of life that they entail a risk to a
person, no matter how innocent." *In re Toon,* 364 *A.* 2d 1177
(D. C. App., 1976) (dissenting opinion). Insisting that
sufficient evidence linking a suspect to the crime be pro-
duced serves to outweigh the inherent suggestibility pres-
ent in all lineups. *United States v. Allen,* 133 *U. S. App.
D. C.* 84, 408 *F.* 2d 1287, 1289 (1969). Where the prose-
cutor is unable to advance any articulable reason to support
his motion to compel a lineup, no useful purpose would be
served by allowing the prosecutor to place a potential de-
fendant in a lineup as a suspect. Should the prosecutor
decide to disclose additional facts to this court to support
his belief that Andrew Foy was involved in other crimes,
this court will of course consider the additional informa-
tion. In its absence, the motion is denied.